HOLYFIELD, RECEIVER, v. DAVIS.

Opinion delivered July 14, 1919.

1. BANKS AND BANKING—INSOLVENT BANK—WITHDRAWAL OF STOCK
   AND NOTES GIVEN FOR STOCK—LIABILITY OF STOCKHOLDERS.—Stock-
   holders of an insolvent bank who wrongfully withdrew funds paid
   for their stock or who were indebted for stock subscribed, and
   withdrew their notes, are liable *pro tanto* to the creditors of the
   insolvent bank.

2. BANKS AND BANKING—WITHDRAWAL OF STOCK—INSOLVENCY—LIA-
   BILITY OF STOCKHOLDERS TO CREDITORS.—The stockholders of the
   C. bank withdrew their stock, and others who had given notes
   for stock withdrew the said notes. This action rendered the bank
   insolvent, as the bank at the time was indebted to the J. bank
   on a note and an overdraft. One H., president of the C. bank,
   then delivered his note to the J. bank in a sum covering both
   note and overdraft, and the J. bank endorsed the note of the
   C. bank to him *without recourse* and assigned the overdraft to
   him for collection. H. brought suit and had a receiver appointed
   for the C. bank. *Held,* the stockholders of the C. bank who had
   wrongfully withdrawn paid for their stock, or who were indebted
   for stock subscribed, were liable *pro tanto* to the creditors of the
   insolvent C. bank; and that the debt from the C. bank to the J.
   bank on its note and overdraft were not canceled by the execu-
   tion of the new note by H. and the assignment of the original
   note to H. without recourse.

Appeal from Benton Chancery Court; *Ben F. Mc-
Mahan,* Chancellor; reversed.

STATEMENT OF FACTS.

This action was instituted on January 25, 1915, by
W. B. Holyfield, as receiver of the Bank of Cave Springs,
against W. C. Davis and others.

It is alleged in the complaint that the Bank of Cave
Springs was an Arkansas banking corporation and that
on the 11th day of May, 1911, the same was insolvent;
that W. C. Davis and others, naming them, were stock-
holders. After naming the various parties and the num-
ber of shares held by each, and the par value thereof,
it is further alleged that, on the 10th day of May, 1911,
the Bank of Cave Springs was indebted to the Judsonia
State Bank in the sum of $2,500, evidenced by its prom-

issory note, executed in June, 1910, bearing interest at the rate of ten per cent. per annum; that, on that date, the stockholders named in the complaint passed a resolution cancelling the certificates of stock and directing that the stockholders be repaid in cash the amount of stock subscribed and paid for by them; and that the notes be returned to those who had executed notes for their stock; that, pursuant to this resolution, each of the stockholders named received, through the cashier of the Bank of Cave Springs, assets belonging to the bank equivalent to the amount of stock subscribed for by him; that, by this act of the stockholders the Bank of Cave Springs was rendered insolvent; that E. R. Hughes, who was president of the Bank of Cave Springs, individually endorsed the note that was executed by the Bank of Cave Springs to the Judsonia State Bank, and that, on the 9th day of October, 1911, Hughes, for the purpose of taking up the $2,500 note and the overdraft due from the Bank of Cave Springs to the Judsonia State Bank, executed his promissory note in the sum of $3,561.67, due on the 9th of April, 1912, bearing interest at the rate of ten per cent. per annum; that this note was executed under a contract with the Judsonia State Bank whereby it agreed to assign to Hughes the original bank note, which had been individually endorsed by him, and also the overdraft which he had assumed for the purpose of enabling him to collect the same; that, subsequent to October 9, 1911, the Judsonia State Bank, in due course of business, sold the note of $3,561.67, executed by Hughes, and also its note and overdraft for like amount against the Bank of Cave Springs, to the Pangburn State Bank; that the Pangburn State Bank thereafter recovered judgment against Hughes on said note in the sum of $3,831.50; that Hughes brought suit in the chancery court and had a receiver appointed for the Bank of Cave Springs, and as a result of that suit, Holyfield was appointed receiver, and, as such, brings this suit; that Hughes executed all of the notes mentioned for the benefit of the insolvent Bank of Cave Springs and its stockholders; and that the

Pangburn State Bank, which had obtained the judgment in the chancery court against Hughes, should be subrogated to the rights of Hughes; and that the defendants, the stockholders named, should be required to pay the amount of their judgment to the receiver for the use and benefit of the Pangburn State Bank and other claimants against the Bank of Cave Springs. The prayer was for a judgment against each of the defendants in the sum of the par value of their several certificates of stock, which sums are designated.

The answer denied all the material allegations of the complaint, and, among other things, alleged that "if E. R. Hughes executed any note to the Judsonia State Bank, it was executed by Hughes voluntarily and that neither the Bank of Cave Springs nor any of the defendants were liable for the note."

E. R. Hughes was one of the original defendants to this action. He died and the cause has not been revived as to him.

Witness J. N. Rachels testified in part: "I know personally that the assignment made by the Judsonia State Bank to E. R. Hughes of the $2,500 note and the overdraft of $893 was made solely for the purpose of concentrating the indebtedness of the Bank of Cave Springs as near as possible to enable Mr. Hughes, who was on the ground, to proceed with the litigation for the benefit of the Judsonia State Bank and its assignee, and I further know it was never intended that Mr. Hughes should have any right, title or interest in or to the $2,500 note or the overdraft account. In fact, Mr. Hughes was a joint maker on the $2,500 note with the Bank of Cave Springs, and, as president of the bank, was liable for the overdraft, and his note for $3,561.67, and that the vendor note on the Texas lands was given as additional security for the Bank of Cave Springs' indebtedness and to stay suit, or rather to delay the bringing of suit, for a period of twelve months." He further testified:

"In October, 1911, I came to Cave Springs to see E. R. Hughes, as president of the Bank of Cave Springs,

and J. G. McDaniel, as its cashier, with complaints in hand to file against them in favor of the Judsonia State Bank. After some discussion, Hughes reached the conclusion that he was liable for the whole of the indebtedness of the Bank of Cave Springs to the Judsonia State Bank, which was $3,561.67, and he offered to execute his personal note for that amount, on condition that we delay the bringing of the suit for six months and transfer to him the original note of the Bank of Cave Springs for $2,500 and the overdraft account of $893. This deal, however, was not closed up at that time, but conditionally agreed upon with the understanding that I would submit the proposition to the Judsonia State Bank and Mr. Hughes wrote a letter to the Judsonia State Bank, outlining the proposition and urging the bank to accept the settlement, and, after some delay, the Judsonia State Bank did accept the matter of settlement and transfer by endorsement without recourse of both the $2,500 note and the overdraft account. It was distinctly understood, however, that no amount of said indebtedness should be assigned to E. R. Hughes as his property, but assigned to him as our trustee, or agent, for collection, and he immediately after he had executed the note for $3,561.67 went with me to the office of L. H. McGill, representing the matter. In the interim, some time between that visit and another visit in April, the Judsonia State Bank sold and assigned the E. R. Hughes note for $3,561.67 and the Cave Springs Bank note for $2,500 and interest, and the Cave Springs Bank overdraft for $893, to the Pangburn State Bank for a consideration of $3,600 at the time paid.

Witness Rachels further testified that Hughes recognized the Pangburn State Bank as the legal holder of his personal paper, and also the legal holder of the $2,500 note and overdraft of the Bank of Cave Springs and that Hughes wrote Harry Churchill, who was president of the Pangburn State Bank, to that effect. He further testified:

"At the time of purchase of the Hughes note by the Pangburn State Bank and Judsonia State Bank, the

Pangburn State Bank was not personally acquainted with said E. R. Hughes, and it knew at said time that the Bank of Cave Springs was defunct.'' Witness was asked why the Pangburn State Bank would purchase the note under such circumstances, and answered: ''The Pangburn State Bank knew under the law that the stockholders would be liable for the payment of the same.''

Witness Ergenbright, who was the president of the Judsonia State Bank, testified that he had been in the banking business for ten years, at Judsonia. He corroborated substantially the testimony of witness Rachels. He stated that the Judsonia State Bank delivered to Hughes the $2,500 note and overdraft account at the time he executed his individual note to the Judsonia State Bank to enable him, Hughes, to hold the notes and overdraft and sue the stockholders of the Bank of Cave Springs and collect for the account of the Judsonia State Bank. Hughes promised to have the affairs of the Bank of Cave Springs placed in the hands of a receiver, and to make the collections in that way. He brought suit and had the receiver appointed. He also testified that the note of the Bank of Cave Springs to the Judsonia State Bank, for $2,500, and the overdraft account of $893 were assigned to Hughes without recourse, on or about the 23d day of October, 1911, and that the note given to the Judsonia State Bank by Hughes for $3,561.67 was also assigned to the Pangburn State Bank without recourse. The $2,500 note and the overdraft were in the hands of Hughes to be collected for the account of the Judsonia State Bank at the time same were sold to the Pangburn State Bank.

Harry Churchill testified that he was president and business manager of the Pangburn State Bank in October, 1911, and April, 1912; that he was authorized to buy and sell notes; that he purchased for his bank, through Ergenbright, from the Judsonia State Bank, the note given by E. R. Hughes for $3,561.67, including the note of $2,500, executed by the Bank of Cave Springs and endorsed by E. R. Hughes, and the overdraft account

against said bank of $893; that he purchased the same in the ordinary course of business; that at the time he purchased the note, the Judsonia State Bank and the Pangburn State Bank had no connection whatever. The Pangburn State Bank paid face value for the Hughes and Cave Springs indebtedness. The Hughes note and the Cave Springs note and overdraft were purchased as the same indebtedness at the same time. Pangburn State Bank brought suit against Hughes on his personal note and included the note of the Bank of Cave Springs and the overdraft, for the reason that Hughes was preparing to make the collections out of the stockholders, through the receiver. The Pangburn State Bank paid the costs and lawyers' fees to have the Bank of Cave Springs, through Hughes, placed in the hands of a receiver. He further testified he never saw Mr. Hughes and had never had a letter direct from him with reference to the matter.

There was introduced as evidence the proceedings in the chancery court, wherein the Pangburn State Bank was the plaintiff, and E. R. Hughes and others, among them the receivers of the Bank of Cave Springs, were defendants. The receivers of the Bank of Cave Springs were also cross-complainants. There was a decree rendered in that case in favor of the Pangburn State Bank against Hughes, in the sum of $3,831, which decree was to bear interest at the rate of ten per cent. No decree was rendered in favor of the plaintiff against the Bank of Cave Springs for the amount of the $2,500 note and overdraft of $893, and the cross-complaint of the receivers of the Bank of Cave Springs was dismissed for want of equity. There was considerable testimony as to the stock subscriptions and the amount of stock owned, which we will not set forth for reasons stated in this opinion. The testimony was exceedingly voluminous, and we will not set it out further in detail. The court found that there was no equity in the plaintiff's complaint and entered decree dismissing same, from which is this appeal. Other facts stated in the opinion.

*C. M. Rice, J. N. Rachels,* for appellant.

1. The receiver of an insolvent bank stands in the place of the bank with all its powers and duties and represents both bank and creditors. 5 Cyc. 860; 98 Ark. 200. The judgment in the case of *State Bank* v. *Hughes et al.* and in which the receivers of the Bank of Cave Springs were parties establishes three things, viz., (1) the indebtedness, the amount and owner and the probate thereof with the receivers. All defenses are precluded which might have been made. 135 Ark. 43. The finding that the bank was *insolvent* and the appointment of the receiver is sufficient without allowances. 84 Fed. 392; 10 Cyc. 451.

2. A stockholder is entitled to have the liability of stockholders enforced and directors have no right to cancel the notes for stock subscription. 110 Ark. 39. See also 75 Ark. 148; 119 *Id.* 550; Kirby's Digest, §§ 861, 6348.

3. Apply the law of these cases, *supra,* to the facts admitted and proved and this case should be reversed and judgment entered here. 5 Cyc. 446; 66 Ark. 234.

4. The real question here on the record is, who were stockholders and the extent of their liability? The list of stockholders certified by the president and secretary on file in the clerk's office is *prima facie* evidence of who are stockholders. 114 Ark. 344; 45 *Id.* 117.

5. The assets of a corporation being a trust fund for its creditors and unpaid subscriptions being a part of this trust fund, neither the directors nor the aggregate body of stockholders can give it away by releasing the unpaid subscriptions to the stock. 10 Cyc. 451. Where the capital of an insolvent bank is withdrawn by refunding to stockholders, having unpaid creditors, the right to recover from the stockholders passes to the receiver. 34 Cyc. 401.

*Appellees, pro se.*

1. The receiver had no right to maintain this suit because there had been no indebtedness established against the Bank of Cave Springs or these defendants.

2. The stockholders are not liable for the indebtedness of the Bank of Cave Springs to the Judsonia State Bank, because the latter accepted Hughes' personal note with collateral security for the indebtedness and transferred without recourse.

There was no legal assignment to the Pangburn Bank, and it has no right to maintain this suit. 5 C. J. 898-900. There is no evidence that this bank was insolvent.

WOOD, J., (after stating the facts). It was proved that the Bank of Cave Springs was duly incorporated and the appellees, among others, are put down as the stockholders, together with the number of shares owned by each, as appears from the certificate required to be filed by the president and directors of the corporation, and which was filed for record on the 10th day of September, 1909, with the county clerk. Section 845 of Kirby's Digest.

The testimony, as set forth in the above statement, tends to prove that the Bank of Cave Springs became indebted to the Judsonia State Bank, as evidenced by a note, which was executed by the Bank of Cave Springs for $2,500, and, also, its overdraft for $893; that E. R. Hughes, the president of the Bank of Cave Springs, afterwards executed his individual note to cover the sum total of this indebtedness, at which time the Judsonia State Bank delivered to him the $2,500 note and overdraft account, and endorsed the $2,500 note without recourse and that afterwards the Judsonia State Bank transferred the individual note of E. R. Hughes, and also the note of the Bank of Cave Springs and its overdraft, to the Pangburn State Bank for the sum of $3,600.

Counsel for the appellees contend that the stockholders are not liable for the indebtedness of the Bank of Cave Springs to the Judsonia State Bank, because the latter bank accepted Hughes' personal note with collateral security for the amount of the indebtedness represented by the note and overdraft, and transferred said

note to Hughes without recourse, and also its overdraft account. Professor Tiedeman in his work on Commercial Paper, at section 260, says:

"When an endorsement is made 'without recourse' the endorser relieves himself of all liability for the dishonor of the paper. But, whatever popular impression it may produce, such an endorsement is not recognized in law as having cast any suspicion upon the character of the paper, or the financial responsibility of the parties to it."

While the words "without recourse" tend to show that the Judsonia State Bank, the payee of the note, had accepted the individual note of Hughes in payment of the note of the Bank of Cave Springs and had transferred its title in such note to Hughes, yet the testimony set forth in the statement shows that such was not the purpose of the endorsement, but, on the contrary, the preponderance of the evidence shows that the purpose of the delivery of the note and overdraft account to Hughes was to enable him to make collection of the same from the Bank of Cave Springs and its stockholders, and that the individual note executed by him was given, not for the purpose of paying off an indebtedness of the Bank of Cave Springs to the Judsonia State Bank, but for the purpose of becoming a joint maker and jointly liable for such indebtedness.

We are convinced that the title to the note executed by the Bank of Cave Springs to the Judsonia State Bank, and also the overdraft account, was not transferred by the above transaction to Hughes. But, if we were mistaken in this, the appellant could still maintain this suit, for there is no testimony whatever in the record to show that either Hughes or the Bank of Cave Springs has paid the note and overdraft account. Even if it were proved that Hughes had paid the note, he was but a joint maker and the Bank of Cave Springs would still be liable to his estate because the debt, as represented by the note and overdraft, was primarily its obligation. It must be remembered that this is a suit by the receiver of the in-

solvent Bank of Cave Springs to recover the assets of such bank, alleged to have been illegally withdrawn by its stockholders.

Where stockholders of a banking corporation, knowing that the bank is insolvent, sell their stock to the cashier and are paid out of the bank's assets, the effect of the transaction is a withdrawal of their stock from the bank on account of its insolvency in fraud of creditors, and such payments may be recovered by the receiver of the bank for the benefit of its creditors. *Corn* v. *Skillern,* 75. Ark. 148. See 34 Cyc. 401, and cases there cited. The receiver of an insolvent bank stands in the place of and represents such bank. He must collect and administer its assets for the benefit of creditors, stockholders and all who are interested in the financial affairs of the corporation. *Jordan* v. *Harris,* 98 Ark. 200. Even if the testimony had shown that Hughes had paid the debt of the Bank of Cave Springs to the Judsonia State Bank, the other stockholders would be liable to him for their *pro rata* part of such indebtedness, and a stockholder is entitled to have the liability of other stockholders enforced, and the directors have no right to cancel the note. It would be the duty of the receiver of the bank to require the stockholder who had not paid for his stock to pay for the same and to require those who had illegally withdrawn funds to refund the same. *Bank of Des Arc* v. *Moody,* 110 Ark. 39; 34 Cyc., *supra.*

Now, the undisputed testimony shows that at the time of the institution of this suit, the Bank of Cave Springs was insolvent, and that there was an outstanding indebtedness against it. This being true, such of the appellees, who were stockholders, who had wrongfully withdrawn the funds paid for their stock, or who were indebted for stock subscribed, were liable *pro tanto* to the creditors of the insolvent bank.

It follows that the court erred in dismissing the appellant's complaint for want of equity.

There was testimony tending to prove that certain stockholders turned their stock certificates back to the

cashier and that he returned notes, that had been given for stock, to the parties who gave them, and also refunded money that had been paid by certain stockholders for stock.

There appears to be some uncertainty and confusion in the record as to the precise action taken by the stockholders and as to who were the stockholders, and the number of shares of stock held by those who were stockholders and as to the notes that were returned and the amount of money that was refunded, and to whom.

Inasmuch as the cause must be reversed, we will leave this matter open for further proof and a determination of the trial court.

The decree is reversed and the cause will be remanded with permission to the parties, if they so elect, to take further testimony, and for such other proceedings as may be necessary according to law and not inconsistent with this opinion.